IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| RELIA ANN SCOTT, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CASE NO. 3:07-901-WC |
| | ) |
| FORD MOTOR COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT FORD MOTOR COMPANY'S RESPONSE TO PLAINTIFFS' MOTION TO REMAND AND MEMORANDUM OF LAW IN SUPPORT THEREOF

COMES NOW Defendant, FORD MOTOR COMPANY ("Ford"), a Corporation, and submits its Response to Plaintiffs' Motion to Remand and Memorandum of Law in Support Thereof. Ford respectfully requests the Court deny Plaintiffs' Motion to Remand. In support, Defendant shows unto the Court as follows:

### INTRODUCTION AND BACKGROUND

This suit was originally filed on July 9, 2007, in the Circuit Court of Macon County, Alabama. At the time of the original filing, the Plaintiffs fraudulently joined Keith Blakemore d/b/a KB CAR CARE ("KB Car Care") and Harold Emmers, Jr. for the sole purpose of defeating diversity jurisdiction and denying Defendant Ford its right to remove this case pursuant to 28 U.S.C. §§ 1441 and 1446. As to KB Car Care, it is undisputed that no personal jurisdiction exists such that there is any possibility of recovery against that Defendant. Indeed, Plaintiffs did not even attempt to plead the appropriate jurisdictional facts in their Complaint to establish personal jurisdiction, and do not dispute KB Car Care's personal jurisdiction in their Motion to Remand.

As to Harold Emmers, Jr., Plaintiffs mistakenly apply a very narrow exception to the Alabama Guest Statute in a broad brush for all Plaintiffs and assert that the statute is not operative in this instance. The truth is that the only Plaintiff to whom the exception could possibly apply would be the owner of the subject vehicle, Bonita Billings; however, Plaintiffs fail to alert the Court that Bonita Billings released Harold Emmers, Jr. from this case over one (1) year prior to filing the Complaint. Therefore, the citizenship of both these Defendants should be disregarded for removal purposes because they have been fraudulently joined.

Following receipt of Plaintiffs' Complaint, Ford served Requests for Admission to all Plaintiffs because the Complaint only contained a general *ad damnum* clause with respect to the monetary damages sought. In response to Ford's Requests for Admission, each individual Plaintiff **admitted** they were seeking to recover monetary damages in excess of SEVENTY-FIVE THOUSAND and NO/100 ($75,000.00) exclusive of interest and costs. (Exhibit "E" to Document 1). Ford timely filed its Notice of Removal on October 5, 2007, within thirty (30) days of the receipt of Plaintiffs' Responses to Ford's Requests for Admission, and within one (1) year from the July 9, 2007, date of commencement of the action. Removal of this action was proper at that time because diversity of citizenship existed between the only properly joined Defendant [Ford] and the Plaintiffs, and the matter in controversy exceeded $75,000.00. *Nothing presented by Plaintiffs in their Motion for Remand requires any result other than denial of Plaintiffs' motion to remand and removal of this action.*

### REMAND STANDARD

Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). As such, federal courts only have the power to hear cases that they have been

authorized to hear by the Constitution or the Congress of the United States. *See Kokkonen*, 511 U.S. at 377. This Court has provided that "[i]f the defendant presents evidence on a point, a court cannot 'resolve the facts in the plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint." *See Moses v. Allstate Indemnity Co., et al.,* 2006 WL 1361131, slip op. at \*4 (M.D. Ala. May 17, 2006) (quoting *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005)). Furthermore, the Eleventh Circuit has explained that "[t]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Legg v. Wyeth, supra,* 428 F.3d at 1322 (quoting *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir.1998)). As such, fraudulent joinder is a judicially-created doctrine that provides an exception to the requirement of complete diversity for removal purposes. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

## ARGUMENT AND CITATION OF AUTHORITY

Fraudulent joinder is found in three (3) instances: *first, **where there is no possibility that the plaintiff can establish a cause of action against the non-diverse defendant in state court**; second,* where there has been outright fraud in the plaintiffs' pleadings of jurisdictional facts; *third,* where a diverse defendant is joined with a non-diverse defendant to whom there is no joint, several or alternate liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant. *See, e.g, B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981) (providing a description of the first and second type of fraudulent joinder), *Keating v. Shell Chemical Co.*, 610 F.2d 328 (5th Cir. 1980) (providing same) and *Triggs, supra,* 154 F.3d at 1287 (adding the third type of fraudulent joinder).

Removal is proper in this case because KB Car Care and Harold Emmers, Jr. are fraudulently joined defendants. Simply put, there is no possibility that Plaintiffs can seek, establish or enforce a valid cause of action against KB Car Care in an Alabama court because *in personam* jurisdiction does not exist over KB Car Care in the State of Alabama, and any attempt to include it as a named defendant in order to destroy complete diversity fails under fraudulent joinder. Likewise, there is no possibility that Plaintiffs can establish a valid cause of action against Defendant Harold Emmers, Jr., because, pursuant to § 32-1-2, Ala. Code 1975 [The Alabama Guest Statute], the only viable claim to be brought by a passenger against the "owner, operator, or person responsible for the operation of a motor vehicle" is one of willful or wanton misconduct. In the instant case, it is undisputed that Plaintiffs claims against Harold Emmers, Jr. sound solely in negligence. Therefore, no cause of action exists against Harold Emmers, Jr. based on The Alabama Guest Statute, and any attempt to include him as a named defendant in order to destroy complete diversity fails under fraudulent joinder. In the alternative, since the original filing of Ford's Notice of Removal, new information in the form of Plaintiffs' discovery responses and Harold Emmers, Jr.'s Cross-Claim Complaint against Ford have been presented. This additional information proves that Harold Emmers, Jr. should properly be aligned as a party plaintiff for removal purposes; thus, creating diversity jurisdiction between the parties.

I.  **PLAINTIFF MISAPPLIES A NARROWLY TAILORED EXCEPTION TO THE ALABAMA GUEST STATUTE AND HAROLD EMMERS, JR. REMAINS A FRAUDULENTLY JOINED DEFENDANT**

Plaintiffs' sole ground for remand with respect to Harold Emmers, Jr. is based on the narrowly tailored exception to The Alabama Guest Statute outlined by the Alabama Supreme Court in *Coffey v. Moore*, 948 So. 2d 544. However, Plaintiffs' quest for remand fails on this point because the exception is not applicable in this case for two (2) reasons. *First*, the "owner"

of the subject vehicle, Bonita Billings[1] [Individually and as Heir of the Estate of Nathan Billings and as Next Friend of Bethany Billings], executed a "FULL AND COMPLETE RELEASE" of Harold Emmers, Jr. on <u>March 23, 2006</u>, "from any and all claims, demands, and causes of action of whatsoever nature, whether in contract or in tort...for or on account of an automobile accident which occurred on or about August 6, 2005 [the subject crash] in Tuskegee, Macon County, Alabama." (<u>See</u> Exhibit "A", Full and Complete Release, p. 1, Bates No. P000153). *Second,* at the time of the subject crash, it is undisputed that Harold Emmers, Jr. was "***responsible for the manner of the automobile's operation***" and was a "***generous driver***" of the subject vehicle. *See Thedford v. Payne,* 813 So. 2d 905 (Ala. 2001) *cert. denied* Alabama Supreme Court 1001574 (Aug. 31, 2001). Therefore, the remaining Plaintiffs ["guests"] are precluded from bringing any cause of action against Defendant Emmers, except one sounding in wantonness, pursuant to the Alabama Guest Statute. Plaintiffs' claims sound only in negligence.

In support of remand, Plaintiffs cite to *Coffey, supra* for the proposition that Defendant Emmers "derives no immunity from the Alabama Guest Statute simply because he was driving the van at the time of the incident." (Plaintiffs' Motion, p. 7). Nothing could be further from the truth. *Coffey* is both factually and legally distinguishable from the present case. It involved only <u>two</u> parties, the lessee of the vehicle [Coffey] and her guest [Moore]. *Id.* at 545. Coffey asked Moore to accompany her on a trip to Tallahassee, Florida, to visit Coffey's daughter. *Id.* During the return trip, Moore [guest] was driving while Coffey slept in the backseat. *Id.* The vehicle rolled over when Moore attempted to change lanes and lost control of the vehicle . *Id.* Coffey sustained injuries in the crash and sued Moore and her automobile liability insurance carrier for

---

[1] The Title History for the subject vehicle lists the owner as BTB Learning, an organization owned by Bonita Billings, and the Vehicle Title is signed by Bonita Billings. (<u>See</u> Exhibit "B", Subject Vehicle Title History).

uninsured/underinsured-motorist benefits. *Id.* Moore and the insurance carrier, Metropolitan, sought summary judgment based on The Guest Statute. *Id.* at 546.

The Supreme Court of Alabama noted, "[T]his Court has not directly addressed the issue whether, ***under circumstances like those before us***, the status of an owner may change during a road trip so that ***the owner*** becomes the guest." *Id.* at 547. Therefore, from the outset of its analysis, the Court recognized that *Coffey* presented a very specific and unique set of circumstances – that being whether an owner may become a guest during the course of a trip. The Supreme Court held that, "***under the circumstances of this case***...Moore's classification as a guest under Alabama's guest statute was determined at the inception of the journey, and the simple act of changing drivers did nothing to affect or alter this classification." *Id.* at 548. Therefore, it is clear the Alabama Supreme Court carved out a very narrowly tailored exception to the Alabama Guest Statute so that an original "owner" may not subsequently become a "guest" to preclude the ***original "owner"*** from bringing a cause of action sounding in negligence against the ***original "guest"***.

The unique circumstances presented in *Coffey* are not analogous to the situation presented by the case at bar. At the time of filing Plaintiffs' original Complaint, Defendant Emmers had been released from all causes of action by three (3) of the six (6) Plaintiffs. Bonita Billings, the owner of the subject vehicle, was one (1) of the releasing Plaintiffs, and no question existed about whether Bonita Billings could possibly establish a valid cause of action against Defendant Emmers. She could not. She had dismissed all claims against him more than one (1) year before filing. (Ex. "A").[2] Therefore, it is impossible for the *Coffey* exception to apply in this instance.

---

[2] Defendant Ford would have alerted the Court to this situation prior to filing its Notice of Removal, but Plaintiffs interestingly omitted this fact from their Complaint, and did not disclose the release until they served discovery responses.

Indeed, the <u>only</u> three Plaintiffs who had not dismissed Defendant Emmers appear to be his blood relatives. (<u>See</u> Exhibit "C", Plaintiffs' Objections and Answers to Ford's First Set of Interrogatories, pp. 1-3).

The *Coffey* exception notwithstanding, in a situation where the individual "driving" a vehicle is not the "owner" of the vehicle, the Supreme Court of Alabama has found The Alabama Guest Statute applicable and precluded non-owner guests from bringing simple negligence allegations against the driver. *See Thedford, supra,* 813 So. 2d 905 (Ala. 2001). *Thedford* involved a situation where Tommy Thedford was giving his friend Calvin Payne a ride home after football practice. *Id.* at 907. Thedford was driving his mother, Beverly Thedford's, automobile. *Id.* Payne sued Tommy Thedford for negligence as the driver, and also sued Beverly Thedford for negligent entrustment. *Id.* Both Tommy and Beverly argued that Payne's claims were barred by The Alabama Guest Statute and moved for summary judgment. *Id.* at 906-07. The trial court denied the motion. *Id.*

In its analysis, the Supreme Court of Alabama distinctly recognized a difference between the "driver" of the vehicle and the "owner" of the vehicle. The Court initially reviewed Payne's individual claim against the driver Tommy Thedford for simple negligence. *Id.* at 908-09. The Supreme Court of Alabama found that the purpose of The Alabama Guest Statute was "*to prevent generous <u>drivers</u>, who offer rides to <u>guests</u>, from being sued in what often are close cases of negligence*". *Id.* at 908. Thus, because Tommy Thedford was the "*driver*" of the vehicle and Calvin Payne was a "*guest*", the Supreme Court concluded The Alabama Guest Statute applied to preclude Payne's negligence allegation against Tommy Thedford. *Id.* at 909.

After addressing Calvin Payne's wantonness claim against Tommy Thedford, the Supreme Court of Alabama undertook a separate analysis of the negligent entrustment claim

- 7 -

brought against the vehicle owner, Beverly Payne. *Id.* at 911-12. With respect to this separate claim brought by the Plaintiff against the owner of the vehicle, the Court determined that "Alabama's Guest Statute does not bar a negligent-entrustment claim against the owner of an automobile. The Guest Statute applies 'only to such person as may be responsible for the *manner of [the automobile's] operation*; ... **it does not apply** to the *owner* **unless** he is operating the [automobile] *in person* or it is under his immediate control or is operated by his servant or agent duly authorized by him." *Id.* at 911; *quoting Penton v. Favors*, 262 Ala. 262, 269 (1955)(emphasis added). Thus, The Supreme Court of Alabama concluded that The Alabama Guest Statute does not preclude a negligent entrustment claim against an owner that is not controlling or driving the vehicle.

The Supreme Court of Alabama's analysis in *Thedford* is closely analogous to the present case. Here, the owner, Bonita Billings, entrusted the subject vehicle to Defendant Emmers in much the same way that Beverly Thedford entrusted her automobile to Tommy Thedford. Likewise, the "guests" [Plaintiffs] in the subject vehicle have alleged claims of negligence against their husband, father and relative exactly like Calvin Payne alleged negligence against Tommy Thedford. In contrast, this case is in no way similar to the fact scenario presented in *Coffey* since the "owner" of the vehicle [Billings] has no valid cause of action against the "driver" [Emmers] due to the fact she released all claims against Defendant Emmers over a year before this case was filed. Therefore, the case at bar calls for the same analysis and conclusion as the *Thedford* Court – that being there is no possibility the non-releasing Plaintiffs, Linda Emmers, Susie Emmers and Harold Emmers, III, can establish a cause of action against Harold Emmers, Jr. pursuant to The Alabama Guest Statute. For these reasons, Defendant Emmers should be ignored for removal purposes because he is clearly a fraudulently joined defendant.

## II.   THE LACK OF *IN PERSONAM* JURISDICTION OVER KB CAR CARE IS NOT DISPUTED BY PLAINTIFFS AND THE PREVAILING PRECEDENT OF THE MIDDLE DISTRICT OF ALABAMA MANDATES A DENIAL OF PLAINTIFFS' MOTION FOR REMAND

In their Motion to Remand, Plaintiffs do not dispute, at any point, the lack of *in personam* jurisdiction by an Alabama court over Defendant KB Car Care.  Therefore, for purpose of this response, and so as not to waste the Court's time with needless recitation of fact and law, Ford will not address the personal jurisdiction issue – other than to say that it is undisputed based on the Plaintiffs Complaint, Ford's Notice of Removal and Plaintiffs' Motion to Remand.  Indeed, Plaintiffs' only contention with respect to KB Car Care is that this Court "does not have to decide whether Alabama courts have personal jurisdiction…prior to deciding" on the Motion to Remand.  (Plaintiffs' Motion, p. 2).  In support, Plaintiffs cite to the case of *Lane v. Champion Int'l*, 827 F.Supp.701 (S.D. Ala. 1993).  However, Plaintiffs completely ignore Senior Middle District Judge Albritton's opinion in *Trenesa Thomas v. Mitsubishi Motors North America, Inc.* decided June 19, 2006.  *See Trenesa Thomas v. Mitsubishi Motors North America, Inc.*, 436 F.Supp.2d 1250 (M.D. Ala. 2006).  Judge Albritton's decision is directly on point.

In *Thomas*, Plaintiff [a Georgia citizen] filed suit in Lowndes County against Mitsubishi Motors North America, Inc. ("MMNA") [a California citizen] and Don Jackson Import Cars, Inc. ("Don Jackson") [a Georgia citizen].  *Thomas, supra,* at 1251.  MMNA removed the case based on a lack of *in personam* jurisdiction over Don Jackson.  *Id.*  Specifically, MMNA contended that Don Jackson was fraudulently joined.  *Id.*  Likewise, Don Jackson also filed a motion to dismiss and joined in the removal.  *Id.*

Judge Albritton, relying on the United States Supreme Court opinion in *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999), decided the personal jurisdiction question first, and explained, "**because the subject matter jurisdiction issue involves issues of *in personam***

- 9 -

**jurisdiction, the court finds it appropriate to consider the issue of personal jurisdiction first.**" *Thomas* at 1251-52. The court went on to dismiss Don Jackson as a defendant and deny the plaintiff's motion to remand. *Id.* at 1256.

The facts of the present case and the situation present in *Thomas* are consistent and require the same result. In fact, if a distinction can be made at all, it would be that plaintiff in the *Thomas* case actually disputed whether the non-diverse defendant, Don Jackson, was subject to the personal jurisdiction of the court; thus providing an additional step to be taken by Judge Albritton in denying plaintiff's motion to remand. Here, no such additional step must be taken because Plaintiffs do not dispute that the Court lacks *in personam* jurisdiction over Defendant KB Car Care. For these reasons, it is clear that KB Car Care is a fraudulently joined defendant and should be ignored for purposes of removal.

WHEREFORE, PREMISES CONSIDERED, the Defendant Ford Motor Company respectfully prays that the Court deny Plaintiffs Motion to Remand, and that the above-entitled cause be removed to the United States District Court for the Middle District of Alabama, Eastern Division.

DONE this the 16th day of November, 2007.

Respectfully submitted,

/s/ John Isaac Southerland
D. Alan Thomas
H. Lanier Brown, II
John Isaac Southerland (ASB 8846-N76K)
Attorneys for Defendant,
FORD MOTOR COMPANY

**OF COUNSEL:**

HUIE, FERNAMBUCQ & STEWART, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, AL 35223-2484
Telephone: (205) 251-1193
Telecopier: (205) 251-1256

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to those attorneys registered and I have placed a copy of the foregoing to the attorneys not set up for email notification in the United States Mail, postage prepaid and properly addressed, on this the 16th day of November, 2007.


Walter McGowan, Esq.
GRAY, LANGFORD, SAPP, McGOWAN, GRAY,
 GRAY & NATHANSON, P.C.
P. O. Box 830239
Tuskegee, AL 36083-0239

Keith Blakemore d/b/a Car Care
4703 A Plainfield
Houston, TX 77036

Harold Holly Emmers, Jr.
10830 Harvest Sun Drive
Houston, TX 77064
Robert E. Ammons
The Ammons Law Firm
3700 Montrose Boulevard
Houston, TX 77006


                    /s/ John Isaac Southerland
                    Of Counsel

# EXHIBIT A

# FULL AND COMPLETE RELEASE

THE STATE OF TEXAS §
§   KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF HARRIS §

That we, **BONITA BILLINGS and ARTHUR BILLINGS**, Individually and as heirs of the Estate of Nathan Billings (hereinafter "RELEASORS"), in consideration of the sum of ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000.00), the total of which is now being paid to us in exchange for this Release, do hereby **release, acquit, and forever discharge LINDA K. EMMERS and HAROLD EMMERS, JR.**, and by these presents do, for ourselves, our heirs, executors, administrators, legal representatives, successors, and assigns, **release, acquit, and forever discharge LINDA K. EMMERS and HAROLD EMMERS, JR.** from any and all claims, demands, and causes of action of whatsoever nature, whether in contract or in tort, and specifically including all claims brought under a "wrongful death" cause of action for the death of our son, Nathan Billings, as well as all claims brought on behalf of our son's estate pursuant to a "survival" cause of action, for any and all damages of any type which have accrued or ever may accrue to us, our heirs, executors, administrators, legal representatives, successors, and assigns for or on account of an automobile accident which occurred on or about August 6, 2005 in Tuskegee, Macon County, Alabama.

Additionally, we, **BONITA BILLINGS and ARTHUR BILLINGS**, further agree to **indemnify and hold harmless LINDA K. EMMERS and HAROLD EMMERS, JR.** from any and all subsequent claims for contribution and/or indemnification brought by any party to a subsequent legal proceeding, such claims being asserted by, through, or under us.

Furthermore, we, **BONITA BILLINGS and ARTHUR BILLINGS**, further agree to **indemnify and hold harmless LINDA K. EMMERS and HAROLD EMMERS, JR.** from any claims, subrogation interests, or liens brought on behalf of any healthcare provider or health insurer for medical care or treatment received as a result of the incident made the

Billings
P000153

**DEFENDANT'S EXHIBIT**
**A**

basis of the above-referenced claim.

The aforementioned consideration is accepted by RELEASORS in full satisfaction of all damages to RELEASORS arising from said incident.  The payment of said sum by the parties released herein is not to be construed as an admission of liability, which has been denied.

The consideration mentioned above is accepted by us in **full compromise and settlement** of all claims and causes of action for personal injuries, mental anguish, bystander claims, survival claims, and wrongful death claims, both individually and as heirs on behalf of the decedent's estate, which might have been asserted in a possible suit against **LINDA K. EMMERS and HAROLD EMMERS, JR.**

As part of the consideration for the payment of the above sum of money, we, for ourselves, our heirs, executors, administrators, legal representatives, successors, and assigns, have agreed to and hereby do **indemnify and hold harmless** each and all of the parties hereby released from any and all claims, demands, actions, and causes of action of whatsoever nature or character which have been or which hereafter may be asserted by any person, firm, or corporation whomsoever claiming by, through, or under us for the injuries and damages sustained by us as a result of the death of our son in the above-described incident.

EXECUTED this _23rd_ day of _March_ , 2006.

_____
**BONITA BILLINGS, INDIVIDUALLY AND AS HEIR OF THE ESTATE OF NATHAN BILLINGS, DECEASED**

_____
**ARTHUR BILLINGS, INDIVIDUALLY AND AS HEIR OF THE ESTATE OF NATHAN BILLINGS, DECEASED**

THE STATE OF TEXAS    §
                      §
COUNTY OF HARRIS      §

BEFORE ME, the undersigned authority, on this day personally appeared **BONITA BILLINGS**, known to me to be the person whose name is subscribed above, and, being by me duly sworn, upon her oath acknowledged to me that she executed the same for the purposes and consideration therein expressed.

SWORN TO AND SUBSCRIBED before on the 23rd day of March, 2006, to certify which witness my hand and seal of office.



_____
NOTARY PUBLIC in and for
THE STATE OF T E X A S

FELISHA YVETTE LAVALLIS
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
JAN. 31, 2009

THE STATE OF TEXAS    §
                      §
COUNTY OF HARRIS      §

BEFORE ME, the undersigned authority, on this day personally appeared **ARTHUR BILLINGS**, known to me to be the person whose name is subscribed above, and, being by me duly sworn, upon his oath acknowledged to me that he executed the same for the purposes and consideration therein expressed.

SWORN TO AND SUBSCRIBED before on the 23rd day of March, 2006, to certify which witness my hand and seal of office.



_____
NOTARY PUBLIC in and for
THE STATE OF T E X A S

FELISHA YVETTE LAVALLIS
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
JAN. 31, 2009

Billings
P000155

## FULL AND COMPLETE RELEASE

THE STATE OF TEXAS   §
                        §    KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF HARRIS   §

That I, **BONITA BILLINGS, AS NEXT FRIEND OF BETHANY BILLINGS, A MINOR**, in consideration of the sum of FIVE THOUSAND AND NO/100 DOLLARDS ($5,000.00), paid now to **BONITA BILLINGS, AS NEXT FRIEND OF BETHANY BILLINGS, A MINOR**, and future payments to **BETHANY BILLINGS, A MINOR**, as described below and having a present value of $15,000.00 in exchange for this Release, do hereby **release, acquit, and forever discharge** and by these presents do, for myself, my heirs, executors, administrators, legal representatives, successors, and assigns, **release, acquit, and forever discharge HAROLD EMMERS, JR., LINDA K. EMMERS, AND PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY** from any and all claims, demands, and causes of action of whatsoever nature, whether in contract or in tort, for personal injuries or property damage which have accrued or ever may accrue to the minor child, **BETHANY BILLINGS**, her heirs, executors, administrators, legal representatives, successors, and assigns for or on account of an automobile accident which occurred on or about August 6, 2005, in Tuskegee, Macon County, Alabama.

Additionally I, **BONITA BILLINGS, AS NEXT FRIEND OF BETHANY BILLINGS, A MINOR**, further agree to **indemnify and hold harmless HAROLD EMMERS, JR., LINDA K. EMMERS, AND PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY** from any and all subsequent claims for contribution and/or indemnification brought by any party to a subsequent legal proceeding, such claims asserted by, through, or under **BETHANY BILLINGS, A MINOR**. This indemnity is limited to claims brought by, through or under the

Billings
P000156

Plaintiffs and released parties.

Furthermore I, **BONITA BILLINGS, AS NEXT FRIEND OF BETHANY BILLINGS, A MINOR**, further agree to **indemnify and hold harmless HAROLD EMMERS, JR., LINDA K. EMMERS, AND PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY** from any claims or liens brought on behalf of any healthcare provider for medical care or treatment received by me or my minor child, **BETHANY BILLINGS**, as a result of the incident made the basis of the above-referenced claim.

The aforementioned consideration is accepted by the undersigned in full satisfaction of all damages to the minor Plaintiff, **BETHANY BILLINGS**, arising from said incident. The payment of said sum by the party released herein is not to be construed as an admission of liability, which has been denied.

The consideration mentioned above is accepted by me, as next friend of **BETHANY BILLINGS, A MINOR**, in **full compromise and settlement** of all claims and causes of action for personal injuries and property damage being asserted or which might have been asserted against **HAROLD EMMERS, JR., LINDA K. EMMERS, AND PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY** for claims arising from the August 6, 2005 accident.

I heretofore have brought suit in the County Civil Court at Law Number Four (4) of Harris County, Texas, cause number 857984 styled *Bonita Billings, as Next Friend of Bethany Billings, A Minor v. Progressive County Mutual Insurance Company, Harold Emmers, Jr. and Linda K. Emmers*, to recover damages sustained by **BETHANY BILLINGS, A MINOR**, as a result of the above-described incident. The consideration mentioned above is accepted by me, on behalf of, **BETHANY BILLINGS, A MINOR**, in **full**

**compromise and settlement** of all claims and causes of action for personal injuries and property damage being asserted in said suit or which might have been asserted in said suit, and I agree that a judgment denying me, and my child, **BETHANY BILLINGS, A MINOR**, any further recovery against **HAROLD EMMERS, JR., LINDA K. EMMERS, AND PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY** may be entered in that suit.

As part of the consideration for the payment of the above sum of money, I, for myself, the minor Plaintiff, **BETHANY BILLINGS**, my heirs, executors, administrators, legal representatives, successors, and assigns, have agreed to and hereby do **indemnify and hold harmless** each and all of the parties hereby released from any and all claims, demands, actions, and causes of action of whatsoever nature or character which have been or which hereafter may be asserted by any person, firm, or corporation whomsoever claiming by, through, or under me or the minor Plaintiff, **BETHANY BILLINGS**, for the personal injuries and damages sustained by **BETHANY BILLINGS, A MINOR**, as a result of the above-described incident.

1.    <u>Payments</u>

In consideration of the Release set forth above, the Insurer on behalf of the Defendants hereby agrees to pay the following sums:

A.    Cash payments due at the time of settlement as follows:

1.    Bonita Billings, As next friend of Bethany Billings, and Wills Law Firm, 2700 Post Oak Blvd., Suite 1350, Houston, Texas 77056, their attorneys, in the amount of $5,000.00 to be paid by Progressive County Mutual Insurance Company, out of which all medical bills, attorney's fees, expenses and costs in connection with Plaintiffs' claims will be paid.

B. Periodic Payments. Defendant, Harold Emmers, Jr., Linda Emmers, agrees to make payments to **BETHANY BILLINGS, A MINOR**, as follows:

Billings
P000158

TO:    Bethany Billings $3,079.57 semi-annually beginning June 1, 2015 and payable for four (4) years certain with the last guaranteed payment being on January 1, 2019 (eight (8) guaranteed payments).

C.    All sums set forth in the section entitled <u>Payments</u> constitute damages on account of personal physical injuries, arising from an occurrence within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

2.    <u>Claimant's Rights to Payments</u>

Claimant agrees:  the Defendants and/or the Insurer is not required to set aside specific assets to secure the periodic payments to Claimant; it being understood Claimant is and shall be a general creditor to the Defendants and/or the Insurer, that the periodic payments cannot be accelerated, deferred, increased or decreased by Claimant; and that the periodic payments shall not be, and cannot be, subjected in any manner to sale, transfer, assignment, pledge, encumbrance, lien, collateral, or any similar transaction. Any attempted sale, transfer, assignment, pledge, mortgage, encumbrance, lien, collateral, or similar transaction is void.

3.    <u>Qualified Assignment</u>

The Parties agree that the Defendants and/or the Insurer may make a "qualified assignment" within the meaning of Section 130(c), of the Internal Revenue Code of 1986, as amended, of the Defendants' and/or the Insurer's liability to make the periodic payments required herein. Any such assignment, if made, shall be accepted by the Claimant without right of rejection and shall completely release and discharge the Defendants and the Insurer from such obligations as are assigned Hartford CEBSCO, the Assignee. The Claimant recognizes that, in the event of such assignment, the Assignee shall be sole obligor with respect to the obligations assigned, and that all other releases that pertain to the liability of the Defendants and the Insurer shall thereupon become final, irrevocable and

Billings
P000159

absolute.

If the liability to make the periodic payments is assigned by way of a "qualified assignment":

A)     that Periodic payments from the Assignee cannot be accelerated, deferred, increased or decreased by the Claimant;

B)     the Assignee does not provide to the Claimant rights against the Assignee that are greater than those of a general creditor; and

C)     the Assignee's obligation for payment of the periodic payments is no greater than the obligation of the assignors prior to execution of this assignment.

4.     Right to Purchase an Annuity

The Defendants, the Insurer, and/or the Assignee reserve the right to fund its liability to make periodic payments through the purchase of an annuity contract from Hartford Life Insurance Company. The Defendants, the Insurer, and/or the Assignee shall be the owner of the annuity policy, and shall have all rights of ownership. The Defendant, the Insurer, and/or the Assignee may direct the annuity carrier, Hartford Life Insurance Company, to mail payments directly to the Claimant. The Claimant shall be responsible for maintaining the currency of the proper mailing address and evidence of survivorship with Hartford Life Insurance Company.

5.     Payee's Beneficiary

Any payments to be made after the death of the Payee pursuant to the terms of this Release shall be made to such person or entity as shall be designated in writing by the said Payee, upon reaching the age of majority, to the Defendants, the Insurer or the Assignee. If no such person or entity is so designated by said Payee, such payments shall be made to the Estate of the Payee. No such designation, nor any revocation thereof,

shall be effective unless it is in writing and delivered to the Defendants, the Insurer or the Assignee. The designation must be in a form acceptable to the Defendants, the Insurer or the Assignee, but in no event shall the request of the Payee be unreasonably withheld or denied.

6.    Discharge of Obligation

The obligation of the Defendants, and Insurer, and/or the Insurer's Assignee to make each installment payment shall be discharged upon the mailing of a valid check in the amount of such payment to the address designated by the Party to whom the payment is required to be made under this Settlement Agreement.

7.    Nature of Payments

All sums paid pursuant to this Structured Settlement constitute damages on account of personal injuries or sickness arising from physical injuries that resulted from the allegations made in the Lawsuit and no portion of the proceeds paid under this Structured Settlement represent exemplary or punitive damages nor pre-judgment or post-judgment interest.

8.    Future Cooperation

All parties agree to cooperate fully and execute any and all supplementary documents and take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Settlement Agreement, which are not inconsistent with its terms.

9.    General Release

The Claimant hereby agrees that the Release set forth in paragraph 1 is a general release and waives and assumes the risk of any and all claims for damages which exist,

13.   Governing Law

This Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of Texas.

14.   Additional Documents

All Parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Settlement Agreement.

None of the Parties released, nor the Defendants' assignee have made any representations concerning, nor shall they be responsible in any manner for, the income tax consequences to the Claimant's of the execution of this Agreement, of any payment made pursuant to this Agreement, of the execution of an assignment referenced in this Agreement, or of any payments made pursuant to that assignment.

15.   Effectiveness

This Settlement Agreement shall become effective following execution.

EXECUTED this 1st day of June , 2006.

_____
BONITA BILLINGS, AS NEXT FRIEND OF
BETHANY BILLINGS, A MINOR

## FULL AND COMPLETE RELEASE

THE STATE OF TEXAS    §
                          §    KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF HARRIS    §

That I, **BONITA BILLINGS, INDIVIDUALLY**, in consideration of the sum of EIGHTY-FIVE THOUSAND DOLLARS ($85,000.00), the total of which is now being paid to me in exchange for this Release, do hereby **release, acquit, and forever discharge** and by these presents do, for myself, my heirs, executors, administrators, legal representatives, successors, and assigns, **release, acquit, and forever discharge HAROLD EMMERS, JR., and LINDA K. EMMERS** from any and all claims, demands, and causes of action of whatsoever nature, whether in contract or in tort, for personal injuries or property damage which have accrued or ever may accrue to me, my heirs, executors, administrators, legal representatives, successors, and assigns for or on account of an automobile accident which occurred on or about August 6, 2005 in Tuskegee, Macon County, Alabama.

Additionally, I, **BONITA BILLINGS, INDIVIDUALLY**, further agree to **indemnify and hold harmless HAROLD EMMERS, JR., and LINDA K. EMMERS** from any and all subsequent claims for contribution and/or indemnification brought by any party to a subsequent legal proceeding, such claims asserted by, through, or under me.

Furthermore, I, **BONITA BILLINGS, INDIVIDUALLY**, further agree to **indemnify and hold harmless HAROLD EMMERS, JR., and LINDA K. EMMERS** from any claims, subrogation interests, or liens brought on behalf of any healthcare provider or health insurer for medical care or treatment received as a result of the incident made the basis of the above-referenced claim.

Billings
P000163

The aforementioned consideration is accepted by the undersigned in full satisfaction of all damages to the undersigned arising from said incident. The payment of said sum by the parties released herein is not to be construed as an admission of liability, which has been denied.

The consideration mentioned above is accepted by me in **full compromise and settlement** of all claims and causes of action for personal injuries and property damage being asserted or which might have been asserted as a result of the August 6, 2005 accident.

The consideration mentioned above is accepted by me in **full compromise and settlement** of all claims and causes of action for personal injuries and property damage which might have been asserted in a possible suit.

As part of the consideration for the payment of the above sum of money, I, for myself, my heirs, executors, administrators, legal representatives, successors, and assigns, have agreed to and hereby do **indemnify and hold harmless** each and all of the parties hereby released from any and all claims, demands, actions, and causes of action of whatsoever nature or character which have been or which hereafter may be asserted by any person, firm, or corporation whomsoever claiming by, through, or under me for the personal injuries sustained by me in the above-described incident.

EXECUTED this _6th_ day of _April_, 2006.

_____
**BONITA BILLINGS, INDIVIDUALLY**

STATE OF TEXAS            §
                         §
COUNTY OF HARRIS          §

BEFORE ME, the undersigned authority, on this day personally appeared **BONITA BILLINGS**, to me known to be the person whose name is subscribed above, and, being by me duly sworn, upon her oath acknowledged to me that she executed the same for the purposes and consideration therein expressed.

SWORN TO AND SUBSCRIBED before on the _6th_ day of _April_, 2006, to certify which witness my hand and seal of office.

_____
NOTARY PUBLIC, STATE OF TEXAS

FELISHA YVETTE LAVALLIS
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
JAN. 31, 2009

_FELISHIA LAVALLIS_
Printed Name of Notary/Notary Stamp
and Commission Exp. Date

Billings
P000165

# FULL AND COMPLETE RELEASE

THE STATE OF TEXAS    §

                     §       KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF HARRIS    §

That we, **BONITA BILLINGS and ARTHUR BILLINGS**, Individually and as heirs of the Estate of Nathan Billings (hereinafter "RELEASORS"), in consideration of the sum of ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000.00), the total of which is now being paid to us in exchange for this Release, do hereby **release, acquit, and forever discharge LINDA K. EMMERS and HAROLD EMMERS, JR.**, and by these presents do, for ourselves, our heirs, executors, administrators, legal representatives, successors, and assigns, **release, acquit, and forever discharge LINDA K. EMMERS and HAROLD EMMERS, JR.** from any and all claims, demands, and causes of action of whatsoever nature, whether in contract or in tort, and specifically including all claims brought under a "wrongful death" cause of action for the death of our son, Nathan Billings, as well as all claims brought on behalf of our son's estate pursuant to a "survival" cause of action, for any and all damages of any type which have accrued or ever may accrue to us, our heirs, executors, administrators, legal representatives, successors, and assigns for or on account of an automobile accident which occurred on or about August 6, 2005 in Tuskegee, Macon County, Alabama.

Additionally, we, **BONITA BILLINGS and ARTHUR BILLINGS**, further agree to **indemnify and hold harmless LINDA K. EMMERS and HAROLD EMMERS, JR.** from any and all subsequent claims for contribution and/or indemnification brought by any party to a subsequent legal proceeding, such claims being asserted by, through, or under us.

Furthermore, we, **BONITA BILLINGS and ARTHUR BILLINGS**, further agree to **indemnify and hold harmless LINDA K. EMMERS and HAROLD EMMERS, JR.** from any claims, subrogation interests, or liens brought on behalf of any healthcare provider or health insurer for medical care or treatment received as a result of the incident made the

basis of the above-referenced claim.

The aforementioned consideration is accepted by RELEASORS in full satisfaction of all damages to RELEASORS arising from said incident. The payment of said sum by the parties released herein is not to be construed as an admission of liability, which has been denied.

The consideration mentioned above is accepted by us in **full compromise and settlement** of all claims and causes of action for personal injuries, mental anguish, bystander claims, survival claims, and wrongful death claims, both individually and as heirs on behalf of the decedent's estate, which might have been asserted in a possible suit against LINDA K. EMMERS and HAROLD EMMERS, JR.

As part of the consideration for the payment of the above sum of money, we, for ourselves, our heirs, executors, administrators, legal representatives, successors, and assigns, have agreed to and hereby do **indemnify and hold harmless** each and all of the parties hereby released from any and all claims, demands, actions, and causes of action of whatsoever nature or character which have been or which hereafter may be asserted by any person, firm, or corporation whomsoever claiming by, through, or under us for the injuries and damages sustained by us as a result of the death of our son in the above-described incident.

EXECUTED this _23 Rd_ day of _March_, 2006.

_____
BONITA BILLINGS, INDIVIDUALLY AND AS HEIR OF THE ESTATE OF NATHAN BILLINGS, DECEASED

_____
ARTHUR BILLINGS, INDIVIDUALLY AND AS HEIR OF THE ESTATE OF NATHAN BILLINGS, DECEASED

Billings
P000157

THE STATE OF TEXAS     §
                       §
COUNTY OF HARRIS       §

BEFORE ME, the undersigned authority, on this day personally appeared **BONITA BILLINGS**, known to me to be the person whose name is subscribed above, and, being by me duly sworn, upon her oath acknowledged to me that she executed the same for the purposes and consideration therein expressed.

SWORN TO AND SUBSCRIBED before on the 23rd day of March, 2006, to certify which witness my hand and seal of office.



FELISHA YVETTE LAVALLIS
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
JAN. 31, 2009

NOTARY PUBLIC in and for
THE STATE OF T E X A S

THE STATE OF TEXAS     §
                       §
COUNTY OF HARRIS       §

BEFORE ME, the undersigned authority, on this day personally appeared **ARTHUR BILLINGS**, known to me to be the person whose name is subscribed above, and, being by me duly sworn, upon his oath acknowledged to me that he executed the same for the purposes and consideration therein expressed.

SWORN TO AND SUBSCRIBED before on the 23rd day of March, 2006, to certify which witness my hand and seal of office.

NOTARY PUBLIC in and for
THE STATE OF T E X A S

FELISHA YVETTE LAVALLIS
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
JAN. 31, 2009

Billings
P000158

# EXHIBIT B

# APPLICATION FOR TEXAS CERTIFICATE OF TITLE

➤ TYPE OR PRINT NEATLY IN INK ◄

**TAX OFFICE USE ONLY**
PAUL BETTENCOURT          HARRIS

| | | | |
|---|---|---|---|
| 1. Vehicle Identification Number | | 2. Year | 3. Make | Body Style |
| 1FBSS31S42HA33919 | | 2002 | FORD | VN |
| 5. Model | 6. Odometer Reading | 7. Empty Weight | 8. Carrying Capacity | 9. Tonnage |
| ECON | 29448 | 6200 | 1500 | .75 |

This space for VTR Use Only

| 10. Trailer Type | 11. Vehicle Unit No. | 13. Applicants/Additional Applicants Social Security Numbers |
|---|---|---|
| 6FVY26 | | |

14. Applicant's Name(s)     BTB LEARNING CTR. INC.     FORT BEND
(Owner)
Address     1749 TEXAS PARKWAY #114     County Name
City, State, Zip Code     MISSOURI CITY TX 77489

14a. Registrant's Name
(Renewal Notice Recipient)
Address
City, State, Zip Code     County Name

14b. Vehicle Physical Location
City, State, Zip Code

15. Previous Owner's Name     CHARLIE THOMAS FORD INC     15a. GDN — Dealer Use Only
Address     12227 GULF FREEWAY
City, State, Zip Code     HOUSTON TEXAS 77034     P9299

**THIS MOTOR VEHICLE IS SUBJECT TO THE FOLLOWING FIRST LIEN**

| 16. 1st Lien Date | 1st Lienholder Name | UNITY NATIONAL BANK | 16a. Additional Lien(s)? |
| 09-20-02 | Address | 2602 BLODGETT | ☐ YES |
| | City, State, Zip Code | HOUSTON TX 77004 | |

17. FOR CORRECTED TITLE, CHECK REASON(S): ☐ Change in Vehicle Description ☐ No Change in Ownership ☐ Add Lien ☐ Remove Lien ☐ Odometer Brand ☐ Odometer Reading

18. ODOMETER DISCLOSURE – FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE UPON TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.

I, CHARLIE THOMAS FORD INC     , state that the odometer now reads 29448     (no tenths)

THE MILEAGE SHOWN IS ☒ A – Actual Mileage   ☐ N – Not Actual Mileage   WARNING – ODOMETER DISCREPANCY   ☐ X – Mileage Exceeds Mechanical Limits

**MOTOR VEHICLE TAX STATEMENT**

19. CHECK ONLY IF APPLICABLE
☐ I hold Motor Vehicle Retailers (Rental) Permit No. _____
☐ I am a Dealer or Lessor and qualify to take the Fair Market Value Deduction (V.A.T.S., Tax Code, §152.002 [c]).

20. DESCRIPTION OF VEHICLE TRADED IN (if any)   Year   Make   Vehicle Identification Number   20a. ADDITIONAL TRADE - INSP (Y/N)

21. SALES AND USE TAX COMPUTATION

| | | |
|---|---|---|
| (a) Sales Price (if _____ HIDDH has been deducted) | $ 19529.32 | ☐ $90 New Resident Tax - (Previous State) |
| (b) Less Trade - In Amount, Describe in Item 20 Above | ($ _____ ) | ☐ $5 Even Trade Tax |
| (c) For Dealers/Lessors Rental ONLY – Fair Market Value Deduction, Describe in Item 20 Above | ($ _____ ) | ☐ $10 Gift Tax |
| (d) Taxable Amount (Item a, minus Item b /Item c) | $ 19529.32 | ☐ Exemption claimed under the Motor Vehicle Sales and Use Tax Law because |
| (e) 6.25% Tax on Taxable Amount (Multiply Item d by .0625) | $ 1220.58 | |
| (f) Tax Paid to _____ (STATE) | $ _____ | |
| (g) AMOUNT OF TAX DUE (Item e, minus Item f) | $ 1220.58 | ☒ $13 APPLICATION FEE FOR CERTIFICATE OF TITLE |

**I HEREBY CERTIFY THAT ALL STATEMENTS IN THIS DOCUMENT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.**

22.
Signature of SELLER, DONOR, OR TRADER     PRINTED NAME (Same as Signature)   CHARLIE THOMAS FORD INC   AMANDA WESSELL   20 SEP 2002

Signature of PURCHASER, DONEE, OR TRADER     PRINTED NAME (Same as Signature)   BTB LEARNING CTR. INC.   20 SEP 2002

**RIGHTS OF SURVIVORSHIP OWNERSHIP AGREEMENT**

Form-130-U (Rev 10/2001)

DEFENDANT'S EXHIBIT
B

# TAX COLLECTOR'S RECEIPT FOR TEXAS TITLE APPLICATION / REGISTRATION / MOTOR VEHICLE TAX

| 1. DATE OF TITLE APPLICATION 09-18-02 | 2. VALIDATION STICKER NO. 13516059MD | 3. EXPRESS LAST DAY OF MONTH: | YEAR | TEXAS LICENSE PLATE NO. U842626 |

4. ☐ TRANSFER OF CURRENT REGISTRATION   ☑ REGISTRATION PURCHASED NO PLATES ISSUED

5. OLD VALIDATION STICKER NO. | 6. OLD TEXAS LICENSE PLATE NO.

7. OWNER (NAME AND MAILING ADDRESS)
BTB LEARNING CTR. INC.
1749 TEXAS PARKWAY #114
MISSOURI CITY      TX      77489

| 13. REG. CLASS 35 | 14. TONNAGE .75 | 15. EMPTY WEIGHT 6200 |
| 16. CARRYING CAPACITY 1500 | 17. GROSS WEIGHT 7700 | 18. DIESEL ☐ |
| 19. YEAR 2002 | 20. MAKE FORD | 21. MDL ELGN | 22. BODY STYLE VN |

23. VEHICLE IDENTIFICATION NUMBER
1FBSS31S42HA33519

| 24. ODOMETER 25440 | 25. BRAND A |

8. 1st LIENHOLDER (NAME AND MAILING ADDRESS)
UNITY NATIONAL BANK
2602 BLODGETT
HOUSTON TX 77004

26. 1st SUPPORTING DOCUMENT/PREV. TX TITLE/DOC #
25010403719E1615150

| 27. ☐ EXEMPT   ☐ $5.00 EVEN TRADE   ☐ $10.00 GIFT   ☐ $90.00 NEW RESIDENT | 32. SALES PRICE 15623. |
| 28. TRADE-IN | 29. GRAND A | 30. REBATE | 31. TAXABLE VALUE 15623. |

DATE OF LIEN 09-20-02

9. 2nd LIENHOLDER (NAME AND MAILING ADDRESS)

33. TAX 1220.59 | 33. PENALTY

DATE OF LIEN

10. 2nd LIENHOLDER (NAME AND MAILING ADDRESS)

| 35. TAX & PENALTY PAID 1220.58 | 34. TOTAL REG & TRANS. TEE 64.42 | 36. TITLE APPL. FEE 13.00 |

DATE OF LIEN

| 36. DEPUTY A. WESSELL | 37. RESIDENT COUNTY 79 | 38. LOCAL FEES 11.50 | 37. TAX & VALUE 19629.32 |

11. SELLER (NAME OF PREVIOUS OWNER AND MAILING ADDRESS)
CHARLIE THOMAS FORD

| 39. DEPUTY A. WESSELL | 40. TOTAL FEES |
| 41. TAX ASSESSOR-COLLECTOR PAUL BETTENCOURT | 42. PROCESSING COUNTY HARRIS |

FORM 31-14E (REV. 1/96) (ONLY GIVE)

CHARLIE THOMAS FORD INC HOUSTON TX

# TEXAS CERTIFICATE OF TITLE

## ORIGINAL

VEHICLE TITLES AND REGISTRATION NUMBER
50 928 292

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE OF VEHICLE | BODY STYLE |
|---|---|---|---|
| 1FBSS31S42HA33919 | 2002 | FORD | VN |

TITLE/DOCUMENT NUMBER
25010037192161158    11/15/2001

| MODEL | MFG. CAPACITY IN TONS | WEIGHT | LICENSE NUMBER |
|---|---|---|---|
| | 3/4 | 6200 | 6FVY26 |

PREVIOUS OWNER
QUITMAN FORD INC QUITMAN TX

ODOMETER READING
3

OWNER
CAPPS RENT A CAR INC
PO BOX 610381
DFW AIRPORT, TX 75261

REMARKS
ACTUAL MILEAGE

SIGNATURE OF OWNER OF AGENT MUST BE IN INK

UNLESS OTHERWISE AUTHORIZED BY LAW, IT IS A VIOLATION OF STATE LAW TO SIGN THE NAME OF ANOTHER PERSON OR A CERTIFICATE OF TITLE OR OTHERWISE GIVE FALSE INFORMATION ON A CERTIFICATE OF TITLE.

| DATE OF LIEN | 1ST LIENHOLDER |
|---|---|
| 10/30/2001 | FORD MOTOR CREDIT CO
PO BOX 105704
ATLANTA, GA 30348-5704 |

1ST LIEN RELEASED   8/1/02
FORD MOTOR CREDIT CO.
D. Alcaid
AUTHORIZED AGENT

| DATE OF LIEN | 2ND LIENHOLDER |
|---|---|

2ND LIEN RELEASED _____ DATE

BY _____
AUTHORIZED AGENT

| DATE OF LIEN | 3RD LIENHOLDER |
|---|---|

3RD LIEN RELEASED _____ DATE

BY _____
AUTHORIZED AGENT

IT IS HEREBY CERTIFIED THAT THE PERSON HEREIN NAMED IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE WHICH IS SUBJECT TO THE ABOVE LIENS.

RIGHTS OF SURVIVORSHIP AGREEMENT
WE, THE PERSONS WHOSE SIGNATURES APPEAR HEREIN, HEREBY AGREE THAT THE OWNERSHIP OF THE VEHICLE DESCRIBED ON THIS CERTIFICATE OF TITLE SHALL, FROM THIS DAY FORWARD BE HELD JOINTLY, AND, IN THE EVENT OF DEATH OF ANY OF THE PERSONS NAMED IN THE AGREEMENT, THE OWNERSHIP OF THE VEHICLE SHALL VEST IN THE SURVIVOR(S).

| SIGNATURE | DATE |
|---|---|
| SIGNATURE | DATE |
| SIGNATURE | DATE |

FORM 30 (REV. 1964)     DO NOT ACCEPT TITLE SHOWING ERASURE, ALTERATION, OR MUTILATION.

WHEN VEHICLE IS SOLD, TITLE HOLDER MUST ASSIGN AND FURNISH THIS TITLE, CURRENT LICENSE RECEIPT, AND SALES TAX AFFIDAVIT TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR-COLLECTOR WITHIN 30 WORKING DAYS TO AVOID $10 PENALTY.

**ASSIGNMENT OF TITLE**

FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.

FORD MOTOR CREDIT COMPANY

HOUSTON, TX 77061

□ 1. The mileage stated is in excess of its mechanical limits.
□ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Nirest

Twiswell

**FIRST REASSIGNMENT DEALER ONLY**

Charlie Thomas Ford

HOUSTON, TX 77034

19400

FORD MOTOR CREDIT COMPANY

Nirswell  P 198W

Sheila O'Daniel

Sheila O'Daniel

**SECOND REASSIGNMENT DEALER ONLY**

BTB Learning CTR. Inc. 1749 Texas Parkway

Missouri City, TX 77489

29449B

CHARLIE THOMAS FORD, INC.

Pa2499

Sheila O'Daniel

Sheila O'Daniel

Bonita D. Billings

**THIRD REASSIGNMENT DEALER ONLY**

□ 1. The mileage stated is in excess of its mechanical limits.
□ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

**LIEN**

LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE
1ST LIEN IN FAVOR OF (NAME & ADDRESS)

# ODOMETER DISCLOSURE STATEMENT

Federal law (and State law, if applicable) requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I, _____ **CHARLIE THOMAS FORD** _____, state that the odometer

(transferor's name — PRINT)

(of the vehicle described below) now reads _____ **29448** _____ (no tenths) miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described below, unless one of the following statements is checked.

☐ (1)  I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.

☐ (2)  I hereby certify that the odometer reading is NOT the actual mileage. WARNING — ODOMETER DISCREPANCY.

| MAKE | BODY TYPE | MODEL |
|---|---|---|
| FORD | | ECONOLINE |
| VEHICLE ID NUMBER | | STOCK NUMBER |
| 1FBSS31S42HA33919 | | SX4057 |
| COLOR | TRIM | YEAR |
| WHITE | | 2002 |

| TRANSFEROR'S PRINTED NAME (SELLER) |
|---|
| CHARLIE THOMAS FORD |

TRANSFEROR'S STREET ADDRESS

12227 GULF FREEWAY

| CITY | STATE | ZIP CODE |
|---|---|---|
| HOUSTON | TX | 77034 |

| DATE OF STATEMENT | TRANSFEROR'S SIGNATURE (SELLER) |
|---|---|
| 09/20/2002 | X _____ |

X _____ Gilbert L. Llanes
PRINTED NAME OF PERSON SIGNING

| TRANSFEREE'S PRINTED NAME (BUYER) |
|---|
| BTB LEARNING CTR. INC. |

STREET ADDRESS

1749 TEXAS PARKWAY #114

| CITY | STATE | ZIP CODE |
|---|---|---|
| MISSOURI CITY | TX | 77489 |

RECEIPT OF COPY ACKNOWLEDGED

X _____ P.C.S    09/20/2002
TRANSFEREE'S SIGNATURE — BUYER    DATE

X  BTB LEARNING CTR. INC.    09/20/2002
PRINTED NAME OF PERSON SIGNING    DATE

## TO BE NOTARIZED BY SELLER

Subscribed and sworn before me, a notary public, in and for the state of ___ **TEXAS** ___

**HOUSTON** City, **HARRIS** County, this **20** day of **SEP** **02**

My commission expires _____

_____
Notary Public

**ORIGINAL MUST ACCOMPANY APPLICATION FOR CERTIFICATES OF TITLE**

# EXHIBIT C

IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

| | | |
|---|---|---|
| RELIA ANN SCOTT, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 07-85 |
| v. | § | |
| | § | |
| FORD MOTOR COMPANY, et al., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' OBJECTIONS AND ANSWERS TO FORD MOTOR COMPANY'S FIRST SET OF INTERROGATORIES

COME NOW the Plaintiffs and object and respond to the first set of interrogatories propounded upon them by Defendant Ford Motor Company as follows:

1.    With respect to Plaintiffs, please state their correct names, age, address, marital status, date of birth, Social Security Number, driver's license number, place of employment, wages and identity of dependents (including name, age and address) at the time of the accident in question and at the time of answering these Interrogatories.

OBJECTION:
Plaintiffs object to this interrogatory insofar as some of the requested information is irrelevant and not calculated to lead to the discovery of admissible evidence.

ANSWER:
Subject to and without waiving said objection, Plaintiffs provide the following information:

Bonita Dinette Scott Billings
| | |
|---|---|
| Age: | 36 (doa) 38 (current) |
| Address: | 923 Turtle Creek Dr., Missouri City, TX 77459 |
| Marital Status: | Married |
| DOB: | 06/07/69 |
| SSN: | 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 |
| TDL: | 14115874 |
| Employment info: | Back to Basic Learning (doa) and currently: Lam, Lynn, Robinson & Phillip, 3555 Timmons #790, Houston, TX 77027 |
| Dependents: | Bethany Billings, 923 Turtle Creek Dr., Missouri City, TX 77459 |


DEFENDANT'S EXHIBIT

Arthur Billings
Age:                43
Address:            923 Turtle Creek Dr., Missouri City, TX 77459
Marital Status:     Married
DOB:                11/09/63
SSN:                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
TDL:                02782824
Employment info:    On date of accident: South Wayside Pharmacy, 900 S. Wayside, Houston,
                    TX.  Currently employed by U.S.A.F., Wilford Hall Medical Center, 2200
                    Bergquist Dr. #1, Lackland AFB 78236.

Bethany Ann Billings
Age:                8 (doa) 10 (current)
Address:            923 Turtle Creek Dr., Missouri City, TX 77459
Marital Status:     Single
DOB:                03/31/97
SSN:                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
TDL:                none
Employment info:    none
Dependents:         none

Ashley Emmers
Age:                14 (doa) 16 (current)
Address:            10830 Harvest Sun Dr., Houston, TX 77064
Marital Status:     Single
DOB:                03/18/91
SSN:                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
TDL:                none
Employment info:    none
Dependents:         none

Linda Kay Emmers
Age:                42 (doa) 44 (current)
Address:            10830 Harvest Sun Drive, Houston, TX 77064
Marital Status:     Married
DOB:                07/04/63
SSN:                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
TDL:                13143522
Employment info:    Gulf Coast Supply Chain, 12610 West Airport #180, Houston, TX.

<u>Harold Emmers III</u>
| | |
|---|---|
| Age: | 17 (doa) 19 (current) |
| Address: | 10830 Harvest Sun Drive, Houston, TX 77064 |
| Marital Status: | Single |
| DOB: | 03/12/88 |
| SSN: | 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 |

<u>Relia Ann Scott</u>
| | |
|---|---|
| Age: | 57 (doa) 59 (current) |
| Address: | 118 Georgia St., Houston, TX 77029 |
| Marital Status: | Single |
| DOB: | 03/23/48 |
| SSN: | 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 |
| Employment info: | Jackson Home Healthcare, Inc., 9888 Bissonnet #500, Houston, TX 77036 |

<u>Susie Emmers</u>
| | |
|---|---|
| Age: | 60 (doa) 62 current |
| Address: | 5122 Rapido, Houston, TX 77033 |
| Marital Status: | Widow |
| DOB: | 01/25/35 |
| SSN: | 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 |
| TDL: | 04627794 |
| Employment info: | Retired |

2.  With respect to Plaintiffs' decedents, please state their correct name, age, address, marital status, date of birth, Social Security Number, driver's license number, place of employment, wages and identity of dependents (including name, age and address) at the time of the accident in question.

ANSWER:

<u>April Latrice Jones Emmers</u>
| | |
|---|---|
| Age: | 14 |
| Address: | 7934 Wolfield Lane, Houston, TX 77071 |
| Marital Status: | Single |
| DOB: | 04/14/91 |
| SSN: | 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 |
| TDL: | none |
| Employment info: | none |
| Dependents: | none |

3

Nathan Joseph Billings
Age:                6
Address:            923 Turtle Creek, Missouri City, TX 77459
Marital Status:     Single
DOB:                12/15/98
SSN:                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
TDL:                none
Employment info:    none
Dependents:         none

3.    In your complaint, you claim that the 2002 Ford Econoline E-350 was unreasonably
      dangerous. Describe completely and in exact detail each and every defect, either in
      design, manufacture, or otherwise, which you claim made such 2002 Ford Econoline
      E-350 "defective."

OBJECTION:
Plaintiffs object to this interrogatory as overly broad, unduly burdensome and attempting to limit
Plaintiffs' evidence to what can be stated in response to an interrogatory. Exact detail regarding
defects requires expert testimony and would require Plaintiffs to marshal the entire evidence
Plaintiffs will use at trial on the subject matter.

In an attempt to be as forthcoming as reasonably possible under the circumstances, Plaintiffs are
responding to this Interrogatory subject to the objections stated above and on the basis of information
currently available. Plaintiffs are providing basic legal and factual claims that are responsive to this
contention interrogatory. Accordingly, Plaintiffs answer below.

ANSWER:
Subject to and without waiving said objection, the subject van was defective and unreasonably
dangerous in its design, manufacture, and/or marketing as it relates to the vehicle's characteristics
for stability, handling, and/'or roll over propensities. The subject van was also in a defective
condition because of defects in the design and manufacture of the restraint system, window and
glazing system, and occupant protection systems in the van.

The 2002 Ford Econoline E350 van is defective with respect to limit handling. It is unstable both
directionally and with respect to rollover resistance when subjected to emergency-type steering
maneuvers. The vehicle is directionally unstable at very low thresholds and extremely dangerous
in the hands of the average driver. The E350's basic geometry (wheelbase, track width and center
of gravity height) is poor even statically and is not appropriate for consumer use. The E350 has low
lateral stability which puts it at greater risk of leaving the roadway, and the E350 has a high rate of
rollover. With each additional occupant, there is an increase in the height of the center of gravity,
a rearward shift in the center of gravity, and an increased vertical load on the rear tires, rendering
ineffective the front steering and stability capability of the front axle (causing oversteer with lateral
accelerations), and increasing the van's rollover propensity. NHTSA testing has revealed and

4

documented the E350's propensity for oversteer and rollover.

Additionally, the E350 is not crashworthy in foreseeable rollovers. The construction of the roof allowed the side window glass in the subject vehicle to shatter during the rollover, thereby failing to prevent partial or complete ejection of occupants and fully contain occupants within the vehicle.

The seats and seat belt restraints also failed in the rollover in question. The seat belts do not, and are not designed to, properly restrain occupants by keeping them in contact with their seat cushions during a rollover.

4. Describe completely and in exact detail how the accident made the basis of this suit occurred, what Plaintiffs and Plaintiffs' decedents were doing at the time of the accident, where they were going, exactly how they were injured, the speed of the vehicle at the time of the accident, and what you contend was the cause of the accident.

OBJECTION:

Plaintiffs object to this interrogatory as overly broad, unduly burdensome and attempting to limit Plaintiffs' evidence to what can be stated in response to an interrogatory. Exact detail regarding defects requires expert testimony and would require Plaintiffs to marshal the entire evidence Plaintiffs will use at trial on the subject matter.

In an attempt to be as forthcoming as reasonably possible under the circumstances, Plaintiffs are responding to this Interrogatory subject to the objections stated above and on the basis of information currently available. Plaintiffs are providing basic legal and factual claims that are responsive to this contention interrogatory. Accordingly, Plaintiffs answer below.

ANSWER:

Subject to and without waiving said objection, on August 6, 2005, a 2002 Ford Econoline E350 15-passenger van bearing VIN 1FBSS31S42HA33919 operated by Defendant Harold Emmers, Jr., was on a return trip from Atlanta to Houston following a national church convention attended by its eight occupants. After leaving Atlanta and traveling some 100 miles to Macon County, Alabama, the van became involved in a road edge recovery maneuver. The van rolled over on-road. As the van rolled over, its roof collapsed, causing the glazing to break, and the seating and restraint systems failed, leading to injuries to its occupants and the wrongful deaths of Nathan Billings and April Jones Emmers.

5. Please state the last time prior to the accident made the basis of this suit Plaintiffs or Plaintiffs' decedents consumed or had in their possession any alcohol, prescription drugs or any other drugs and please also describe or otherwise identify the pharmacy(ies) which were used to provide any prescription medication.

5

OBJECTION:

Plaintiffs object to this interrogatory because it exceeds the permissible scope of discovery in that it seeks discovery of information that is not relevant to the subject matter of the suit and is not reasonably calculated to lead to the discovery of admissible evidence.

ANSWER:

Subject to and without waiving said objection, none known regarding the vehicle's occupants.

6. Please describe any and all medical conditions suffered by Plaintiffs' decedents within the 10 years preceding the subject accident and please indicate in your answer those physicians or health care providers who provided treatment for same.

OBJECTION:

Plaintiffs object to this interrogatory because it exceeds the permissible scope of discovery in that it seeks discovery of information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

ANSWER:

Subject to and without waiving said objection, Decedents had no significant adverse health history. They were wonderful, healthy children with a bright future ahead of them.

7. Please list the names and addresses of each and every expert witness you plan to call in the trial of this case as a witness to give testimony; give the background of such witness which would allow him or her to testify as an expert in such matter, and provide a complete summary of the proposed testimony of each expert.

ANSWER:

Plaintiffs have not yet determined their testifying experts. Plaintiffs will supplement this answer once testifying experts are determined and opinions are reached.

8. Give a complete list of any documents, publications or other writings, pamphlets or literature upon which you rely to prove your allegations against this Defendant or the manufacturer of the product in question.

OBJECTION:

Plaintiffs object to this interrogatory because it fails to describe the items to be identified or listed with reasonable particularity and is overly broad.

ANSWER:

Subject to and without waiving said objection, Plaintiffs refer Defendant to all documents requested by Plaintiffs from Ford Motor Company and the contents of the files of each of Plaintiffs' testifying expert witnesses once they are determined and designated. Additionally, Plaintiffs will list exhibits and provide them for inspection and copying prior to trial if required by the Court. Plaintiffs may

also utilize and/or offer any document produced by any party to this lawsuit.

Subject to this objection, Plaintiffs identify the following documents:

Policy Letter A-7 re: Vehicle Safety
Memorandum to Members of the Board of Directors re: 1991 1/2 Model
Econoline (VN58) Program
Special Review Book #1-90
Timing Delay for 1992 Econoline Program (VN58)
VN127 Program Description Book
Econoline Component Change Time Line
Safety Design Guidelines for New Vehicles
NHTSA 25-04: NHTSA Repeats Rollover Warning to Users of 15-Passenger Vans
1987 Ford Club Wagon
1997 Econoline Vans, Coversions & Club Wagon
600197 600199 Identification and Controlof Critical Characteristics (Regulated and Non-Regulated
Engineering Test Procedures
Light Truck Handling Guidelines
Engineering Test Procedures
P6-101 Acceptance Criteria
Econoline Proposed Model Lineup
Econoline Proposed Model Lineup
Basic Truck Recreation Product Programs - Recreation Products Business
Plan - Econolin/Nantucket Vans/Buses
Indianapolis Meeting Comments
Tilt table angle of 11 vehicles
Inter Office Communications re: 1975 Nantucket Program
Policy Review Request - 1975 Model Nantucket Program
1975 Nantucket Program - Presentation to the Board of Directors November 9, 1972
975 Nantucket Program - Presentation to the Board of Directors November 9, 1972
Long Range Strategy/NAAO Product Meeting April 4, 1973
Long Range Strategy/NAAO Product Meeting April 4, 1973
Long Range Strategy/NAAO Product Meeting April 4, 1973
Long Range Strategy/NAAO Product Meeting April 4, 1973
Inter Office memorandum re: 1977-1/2 Extended Econoline Nomenclature
Product Planning Committee Meeting - May 19, 1975 Design Center
1977 1/2 Econoline Bustlerack
1977 Light Truck Program Description Section 2 Product Summary
Program Report - Revised Stability Index for Utility
Engineering Practice - Potential Failure Mode and Effects Analysis
May 10, 1984 - Ford of Mexico
Ford Safety Segment Design Guidelines
P6-101 Test Procedures

7

Single Lane Change Course 80 [FT] Lane Length
Ford letter to NHTSA re: Advanced Notice of Proposed Rulemaking - Vehicle Rollover Resistance
    (Docket 73-10; Notices 1 and 2)
Corporate Engineering Test Procedure - Rating of Vehicle Handling
Corporate Engineering Test Procedure - Rating of Vehicle Handling
Technical Report re: Light Truck Limit Handling Objectives
Corporate Engineering Test Procedure - Rating of Vehicle Handling
P6-101 Evaluation of Vehicle Handline 1989 Ford E-350 Van
P6-101 Evaluation of Vehicle Handline 1989 Ford E-350 Van
Left FH Summary - E350 (Uncorr'd) CPD (35-40 mph) gdt24575r16
Light Truck Safety Design Guideline Stragety
Corporate Engineering Test Procedure - Rating of Vehicle Handling
Light Truck Technical Specialist Tires
Development Report s
Listing (testing complete don E-350)
P6-101 Evaluation of Vehicle Handling 1996 Ford E-350 Extended Van
1975 Econoline Program Description  IT-75-N-5
P6-101 Test Procedures - 80 Foot Serpentine Course
15-Passenger Vans: NHTSA Issues Safety Advisory
15-Passenger Van Safety - Consumer Advisory
DOT HS 809 704: Testing the Dynamic Rollover Resistance of Two 15-Passenger Vans With
    Multiple Load Configurations
NHTSA 12-05: NHTSA Restates Rollover Warning for Users of 15-Passenger Vans
1962 Ford Falcon Sales Brochure
1961 Ford Econoline Station Bus Brochure
1979 Ford Club Wagons
Television Commercial J. Walter Thompson Company Broadcast 10/11/1979
1981 Ford Club Wagon - Ford's Out Front Design
Page 9 of 1981 Sales Brochure
Page 9 of 1981 Sales Brochure
Sign With a Winning Club - Ford Club Wagons
Ford Commercial Trucks 1992 - Vans
Econoline RV Cutaway Chassis
Breaking News: Ford Statement Regarding NHTSA 15-Passenger Van Consumer Advisory
FMC - 15 Passenger Van Consumer Advisory
FMC - 15 Passenger Van Consumer Advisory
FMC - 15 Passenger Van Consumer Advisory
FMC - 15 Passenger Van Consumer Advisory
FMC - 15 Passenger Van Consumer Advisory
(Presentation excerpt) In Summary
Ford Motor Company Statement Regarding NHTSA 15-Passenger Van Consumer Advisory
Statement - New Draft August 29
Ford Motor Company Statement Regarding NHTSA 15-Passenger Van Consumer Advisory

Statement - New Draft August 29

Ford Motor Company Statement Regarding NHTSA 15-Passenger Van Consumer Advisory Statement - New Draft August 29

Ford Motor Company Statement Regarding NHTSA 15-Passenger Van Consumer Advisory A Warning -Reduce Your Chance of Rollover

(Visor Warning) Rollover

Driver Reminder Program 4x4 Light Trucks and

Excerpt - Page 8

Generalized Steering/Suspense Repsonse

Forward Recordation Product Plans - Cycle Plans

1975 Nantucket Program Econoline Feature Comparison of Present Models

Check Recreation Product Plans

Major New Truck Line Recreation Programs

Notice re: NAAO Product Meeting - July 30, 1973

1975 Econoline Program Description LT-75-N-5

Note printed by RPascare 02/18/1998

1975 Econoline Program Description Section 7 Program Assumptions Approved Added Starters Agenda

Product Planning Subcommittee Meeting 09/30/1982

EAO Truck Development

Test Report Review

Report No. LLB0072

1999 Ford Trucks Body Builders Layout Book

2003 Model Year Owner's Guide E-Series

2004 Model Year Owner's Guide E-Series

2005 Owner's Guide E-Series

1999 Ford Contour - owner's manual

1999 Ford Windstar - owner's manual

Van and Wagon Quick Reference Safety Guide

Safety Advice

Safety Advice

1999 Ford Econoline - owner's manual

1999 Owner's Guide Econoline

2000 Owner's Guide Econoline

2001 Owner's Guide E-Series

2002 Owner's Guide E-Series

1999 Owner's Guide Econoline

Ford Transit Program V184/5 Package Dimensions PDB #8 Assumptions

Briefing Book The All-New Ford Transit

Light Truck Safety Design Guideline Revisions

Inter Office memorandum re: Corporate Safety Segment Design Guideline for Resistance to Rollover, Compliance Documentation for 575.01

Inter Office memorandum re: Corporate Segment Design Guidelines for Resistance to Rollover

9

Guideline for Resistance to Rollover Attachment VI

VE64 Program Description Book Section 1 - Program Summary

Electronic Stability Control (ESC) the Easy Safety Choice

A Simple Guide to Safer Driving

Study of ESC Assisted Driver Performance Using a Driving Simulator

Analysis of Vehicle Stability Control (VSCS Effectiveness from Accident Data

Vehicle Dynamics

News: Ford Delivers Quantum Leap: 500,000 SUVs with Exclusive Roll Stability Control in 2005

Toyota and Automotive Safety

Vehicle Dynamics & Chassis Engineering

April 12th Ressler/Womac FAO/Visteon Meeting Results

Memo: re: Safety Strategy

FAO Safety Assessment

Vehicle Dynamics Vision & Process November 1996

Vehicle Systems Theme Group

1995 Advanced Engineering & Research Program

Vehicle Systems Theme Group (VSTG)

1994 Advanced Engineering & Research Program

Vehicle Dynamics and Chassis Systems

Chassis Chiefs Video Conference

IVD Implementation Strategy

August 27 Ride & Handling Forum Interactive Vehicle Dynamics (IVD)

August 27 Ride & Handling Forum Interactive Vehicle Dynamics (IVD)

FN10 IVD Fleet

Draft (Ford Secret) Enhanced Stability Protection Plus (ESP+)

Enhanced Stability Protection Plus (ESP+)

Technology Introduction and Proposed Phase-in for Initial Applications Truck Business Product Review

2001 Lincoln Safety

Lifesavers 2001 Safety Technologies

1999 MY 4PP Plant Detailed Issues

601729 601740 NHTSA Research Note The Rollover Propensity of Fifteen Passenger Vans

Inter Office memorandum re: June 20-29 VN127 CP Drive Evaluation -- Trip Report

Ford's Technical Analysis of NHTSA's April 2001 Research Note on "The Rollover Propensity of Fifteen-Passenger Vans" NHTSA - Ford Meeting August 20, 2001

Ford's Technical Analysis of NHTSA's April 2001 Research Note on "The Rollover Propensity of Fifteen-Passenger Vans" NHTSA - Ford Meeting August 20, 2001

Statement Ford Motor Company Statement Regarding NHTSA 15-Passenger Van Consumer Advisory

2000 Model Year Owner's Guide Econoline

Updated FARS Light Truck Data

4-Wheeling With Ford - An Owner Guide Supplement for Safe 4x4 Driving

1999 Ford Escort owner's manual (first page missing)

1999 Ford Expedition owner's manual (first page missing)

1999 Ford Explorer owner's manual (first page missing)

Ford Contour owner's manual (first page missing)

1999 Lincoln Town Car owner's manual (first page missing)

Memo to H.H. Soiron re: KAO Truck Papers

Inter Office memorandum to R. N. Hazard re: Corporate Safety Segment Design Guidelines for Component Performance

Attachment 1 - NAAO Light Truck 1992 Safety Segment Design Guidelines Resistance Activity and Documentation Required Matrix

NHTSA's response to FMC's 10/10 analysis of NHTSA's research note titled "The Rollover Propensity of Fifteen-Passenger Vans dated April 2001.

NHTSA's response to FMC's 10/10 analysis of NHTSA's research note titled "The Rollover Propensity of Fifteen-Passenger Vans dated April 2001.

158" WB Cutaway

VN 127/VN58 Road Test Preliminary Results

InterOffice memorandum re: VN127 Sign-Off Trip Report VN127 Sign-Off Evaluation Drive Trip Report

Inter Office re: 1997 VN127 1PP Engineering Extended Drive Trip Report

Development Report re: 1998 MY Econoline 1PP Plant Engineering Drive

Development Report re: 1998 MY Econoline IPP Plant Engineering Drive

Development Report re: 1998 MY Econoline IPP Plant Engineering Drive

Development Report re: 1998 MY Econoline 1PP Plant Issues Follow-up Drive

Report No.: 00.00-98-6 1998 Airstream Trailer Rally in Sarasota FL

Development Report re: 1998 Airstream Trailer Rally in Sarasota, FL

Development Report re: 1998 Airstream Trailer Rally in Sarasota, FL (Exhibit No. 78)

Inter Office re: 1998 MY 1PP Drive Evaluation (April 7-8, 1998)

1999 PP Plant Detailed Issues

Inter Office memorandum to Lorain Assembly Plant/Econoline Program Management re: 1999 MY Econoline Program Management

1999 MY 4PP Plant Detailed Issues

Attention! 15 passenger van drivers

Reducing ... In 15-Passenger Vans

Reducing The Risk of Rollover Crashes in 15-Passenger Vans

NHTSA Research Note - The Rollover Propensity of Fifteen-Passenger Vans

NHTSA Research Note The Rollover Propensity of Fifteen Passenger Vans

Transit Roll Stability Status

Full Size Van/Bus Segment Plans

Econoline* Sales (units) and GPVS ($s) Recap

Advanced IVD - Stability Control Systems Performance Requirement

P28 AWD RSC F07 Release Documentation

News Release - 20 Years of Seat Belt Safety -- Ford Transit Family Leads the Way

Roll Stability Testing - Trustmark Event June 2003

Brakes, Vacuum Distribution, & Chassis Control System Department - Department Roles &

Responsibilities "Pre-Program & Core"
Decision for start of DDS
Memorandum - 1994 Features Marketing Research Clinic
1998 Econoline
Autoweek: Headline - Action, reaction
Interactive Vehicle Dynamics (IVD)* - U152 Impact
NHTSA Consumer Advisory re: 15-passenger vans rollover risk
Safety Report - Evaluation of the Rollover Propensity of 15-passenger Vans
E350 RSC Development and Verification Report
E350 RSC Development and Verification Report
IIHS - News Release: Electronic Stability Control Found Effective Main Effect is to Reduce
Single-Vehicle Crash Risk, Including the Risk of Fatal Single-Vehicle Crashes
NHTSA - Evaluation Note - Preliminary Results Analyzing the Effectiveness of Electronic Stability
Control (ESC) Systems
Presentation - Electronic Stability Control NHTSA Technology Review: Electronic Stability Control
Current Analysis of the Accident Statistics: Mercedes Passenger Cars Get Into Fewer Accidents
NHTSB Safety Recommendation
P28 AWD RSC F07 Release Documentation
S7-0-02 -Improvements in Active Safety by Innovation for Automatic Stability Control Systems
Proposal for 2006MY E350 Roll Stability Control
NHTSA Consumer Advisory re: 15-passenger vans and rollover risk
NHTSA Repeats Rollover Warning to Users of 15-Passenger Vans
Preliminary FN10 IVD Fleet Data Report Vehicle Speed at the Start of an ABS Event
2000 Lincoln LS - Introducing the Lincoln LS Design Goals for the 15 Passenger Van
Acceptance Criteria P6-101 Design Guidelines fot the 15 Passenger Van
Don Thrasher Driving Experience at the Time of the 1998 P6-101 Testing
Ford's Knowledge re: 15 Passenger Vans
Dexter (Kelvin) v. Ford Motor Company - List of Non-Litigated Claims
Dexter (Kelvin) v. Ford Motor Company -List of Lawsuits
Dexter (Kelvin) v. Ford Motor Company -List of Lawsuits
Electronic Stability Program (ESP)

Dexter (Kelvin) v. Ford Motor Company - List of Non-Litigated Claims

9.    Give the name and address of each and every person who has examined or inspected
      in any way the subject 2002 Ford Econoline E-350 since the date of the accident, for
      whom such inspection was done or at whose request, and attach and make a part
      hereto any reports received by you or your representative or which are in your
      representative's control from such person or persons.

OBJECTION:
Plaintiffs object to this request because it seeks information protected by the attorney work product
and attorney-client privilege and exceeds the permissible scope of discovery in that it asks for
information about consulting experts that is not discoverable.

10.    Give the name, current address and current telephone number of each and every witness to the accident made the basis of this suit; each and every person who has any knowledge regarding the accident, the subject vehicle or the injuries you claim in this lawsuit; and each and every lay witness you plan to call in this case.

OBJECTION:
Plaintiffs object to this interrogatory as vague and overly broad.

ANSWER:
Subject to and without waiving said objection, the following have knowledge relevant to this matter:

Robert Tate
8507 Berrington Court
Montgomery, AL 36117
334-233-8283

Sarah Keener
275 Walden Court
Montevallo, AL
205-665-2933

Trooper Jess Thornton
Trooper Chris Williams
Trooper Zack Harrelson
Montgomery County Hwy. Patrol
334-242-4128

East Alabama Medical Center
2000 Pepperell Parkway
Opelika, AL 36801-5452
334-705-1275, 800-331-5527, 334-528-2263

Alabama Dept of Forensic Sciences
Stephen F. Boudreau, M.D.
State Medical Examiner
P. O. Box 240591
Montgomery, AL 36124-0591
334-242-3093

Hal E. Bentley
Coroner, Marion County
500 Fonville Street
Tuskegee, AL 36083

13

334-727-0140

People's Funeral Home
500 Fonville Street
Tuskegee, AL 36083

Care Ambulance of Alabama
L/S Response
Box 530481
Atlanta, GA 30353
800-351-8063

Alabama Imaging, P.C.
2055 Normandie Drive, #108
Montgomery, AL 36801
334-269-6337

Harold Emmers, Jr.
10830 Harvest Sun Drive
Houston, TX 77064

Bonita Billings
923 Turtle Creek Drive
Missouri City, TX 77459
281-416-0147

Arthur Billings
923 Turtle Creek Drive
Missouri City, TX 77459
281-416-0147

Bethany Billings
923 Turtle Creek Drive
Missouri City, TX 77459
281-416-0147

Michael Glenn Emmers
7934 Wolfield
Houston, TX  77071
713-728-4320

Ashley Emmers
10830 Harvest Sun Drive

14

Houston, TX 77064
281-894-6383

Linda Emmers
10830 Harvest Sun Drive
Houston, TX 77064
281-894-6383

Harold Emmers III
10830 Harvest Sun Drive
Houston, TX 77064

Relia Ann Scott
118 Georgia St.
Houston, TX 77029
713-674-6774

Susie M. Emmers
5122 Rapido
Houston, TX 77033
713-738-3478

Employees, representatives and agents of
Ford Motor Company, including
Donald Trasher
Hank Sleath
Richard Schettler
c/o D. Alan Thomas
Huie, Fernambucq & Stewart, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, AL 35223-2484
as well as
William G. Ballard
Ralph Carl Blazer
Leonard Brown
Todd Brown
Greg S. Burgess
Frederick A. Dahnke
Alfred J. Darold
Thomas J. Doyle
Jack Edwards
Joseph Frank Fodera

15

Russ Galorneau
Geoff Gordon
Ervin Grusch
Mark Hansen
Ronald Hazzard
Leonard Johnson
Harry Kert
Sarah Kirkish
Michael McGuire
Richard L. Morrison
Todd Nilles
David Rohweder
Mike Schettler
Henry Sleath
Allen Smith
Kenneth Snodgrass
Gregory Stevens
Donald F. Tandy
Sara Tatchio
Don Thrasher
Richard Vogh
James Vondale
William Garrett Winslow, Jr.
David R Wotton

Keith Blakemore d/b/a KB Car Care
4703 A Plainfield
Houston TX 77064

Plaintiffs have not yet determined their trial witnesses but reserve the right to call any and all persons listed as having knowledge of relevant facts and all testifying experts designated by the parties to this lawsuit. Additionally, Plaintiffs will list witnesses prior to trial if same is required by the Court.

11.     List each and every expense or element of damage which each Plaintiff has incurred as a result of the accident made the basis of this suit and for which you claim reimbursement, and attach hereto a copy of all bills covering such expenses and/or documents upon which you rely for your claim of damages.

ANSWER:
To date, Plaintiffs have knowledge of the following medical expenses incurred for treatment of Plaintiffs' injuries:

16

<u>Bethany Billings</u>
| | |
|---|---|
| Baylor Medcare | $691.00 |
| Care Ambulance of Alabama | $930.00 |
| East Alabama Medical Center | $543.93 |
| Texas Children's Hospital | $3,832.00 |

<u>Bonita Billings</u>
| | |
|---|---|
| Alabama Imaging | $1,089.00 |
| Care Ambulance of Alabama | $930.00 |
| Centerpointe Counseling Service | $125.00 |
| East Alabama Medical Center | $6,760.20 |
| Greater Houston Orthopaedic | $1,074.40 |
| Walgreens | $30.00 |

<u>Linda Emmers</u>
| | |
|---|---|
| Care Ambulance of Alabama | $930.00 |

<u>Ashley Emmers</u>
| | |
|---|---|
| Care Ambulance of Alabama | $930.00 |

Plaintiffs have knowledge of the following funeral/burial expenses regarding decedents April Emmers and Nathan Billings:

<u>April Emmers</u>
| | |
|---|---|
| Graphics Design Group | $2,951.00 |
| Paradise Funeral Home/Cemetery | $2,260.00 |

<u>Nathan Billings</u>
| | |
|---|---|
| Lockwood Funeral Home | $9,585.19 |
| Houston Memorial Gardens | $1,850.00 |
| Fine Print Designers | $1,428.00 |

Plaintiffs are obtaining billing records from all providers and will supplement with responsive documents when received.

12.    List completely each and every injury suffered by Plaintiffs and Plaintiffs' decedents as a result of the accident in question.

ANSWER:

Bonita Billings, Bethany Billings, Linda Emmers, Ashley Emmers and Harold Emmers III were injured. Because of the nature and severity of the injuries, these Plaintiffs have suffered physical pain and mental anguish and will continue to suffer physical pain and mental anguish in the future. They have suffered and will continue to suffer physical impairment, disfigurement, limitation of

17

activities and loss of enjoyment of life. As a direct and proximate result of their injuries, Bonita Billings and Linda Emmers have diminished earning capacity in the past and future. The next friends of the minor Plaintiffs Bethany Billings and Ashley Emmers have incurred medical expenses for treatment of the minor Plaintiffs' injuries in the past and up to the age of majority. Additionally, Nathan Billings and April Jones Emmers sustained injuries from which they died.

Also, see the attached autopsy reports regarding injuries to the decedents, as follow and incorporated herein by reference:

Alabama Dept. of Forensic Sciences re: April Emmers       Bates Labels P000001 - P000006
Alabama Dept. of Forensic Sciences re: Nathan Billings     Bates Labels P000007 - P000017

13.  Do you claim that any changes or alterations were made to the subject 2002 Ford Econoline E-350 subsequent to the time it left the hands of the manufacturer? If so, explain completely and in exact detail your claim concerning such changes or alterations, your information relating to such changes that were made, and state how this directly contributed to cause the accident made the basis of this suit.

ANSWER:
No.

14.  If Plaintiffs and/or Plaintiffs' decedents were covered by any policy of insurance, either individual or group plan, applicable to injuries sustained or any damage to property as a result of this occurrence, list the name of the company, the policy number, the dates of the effective coverage, and the limits of the coverage.

OBJECTION:
Plaintiffs object to this interrogatory insofar as some of the requested information is irrelevant and not calculated to lead to the discovery of admissible evidence.

ANSWER:
Subject to and without waiving said objection, the vehicle was covered by Progressive County Mutual Insurance Co. None of the Plaintiffs owned the vehicle. The Billings plaintiffs had an Allstate policy as well as medical insurance through Blue Cross Blue Shield (ZGP460411916, 1/1/04 to present)), and April Emmers was covered by a policy owned by Michael Emmers with Texas Farm Bureau.

15.  If Worker's Compensation benefits were received because of injuries allegedly sustained in the accident, please state the amount of benefits received; whether any application for adjustment of claim was made; the number assigned thereto; and the name and address of any insurer paying such benefits.

18

ANSWER:

No worker's compensation benefits were received.

16. Identify all statements taken from any witness other than yourself, including the name and last known address of each known witness, the date of said statement, and whether the statement was written or oral.

ANSWER:

Plaintiffs are not aware of any statements.

17. If any release, covenant, loan receipt, or like document has been executed by or between you and any other individual or company, please state the nature or type of such agreement; the parties thereto; the date of such agreement, and any and all amounts received as a result thereof by or on behalf of the Plaintiffs.

ANSWER:

Allstate Claim 1546667815 - 5/2/06 underinsured motorist $40,000 payment for Bonita Billings' injuries and 1/25/06 $50,000 payment for Nathan Billings' death.

Allstate Claim 1546667815 - 10/24/05 $930 PIP payment and 11/20/06 $20,000 underinsured motorist payment for Bethany Billings' injuries.

Texas Farm Bureau Insurance Claim 498026 - PIP $10,000 9/1/05 payment to Michael Emmers on behalf of April Emmers.

Plaintiffs Bonita Billings, Individually & a/n/f Bethany Billings, and Bonita & Arthur Billings, Individually & for the Estate of Nathan Billings, have signed a release of Harold Emmers, Jr., and the Releases are attached to Plaintiffs' response to request for production. The Legal Representatives of the Estates, Relia Ann Scott and Susie Emmers have not executed any Releases.

18. Give the name and address of each and every person, firm or corporation to your knowledge who has made photographs, videotapes, drawings, surveys, measurements or other records or descriptions of the subject 2002 Ford Econoline E-350 and/or the scene where the accident occurred and attach hereto a complete copy of all items in your possession relating to the 2002 Ford Econoline E-350 at the time of the accident made the basis of this suit.

OBJECTION:

Plaintiffs object to this request because it seeks information protected by the attorney work product and attorney-client privilege and exceeds the permissible scope of discovery in that it asks for information about consulting experts that is not discoverable.

19

ANSWER:

Subject to and without waiving said objection, as indicated on the accident report, Alabama troopers responding to the accident took photographs. Plaintiffs' counsel is in possession of photographs taken by Plaintiffs' consulting experts.

19. Please set forth the name and address of each person, firm or corporation who made any repairs to or replaced any parts or components in or performed any mechanical work or service on the vehicle described in the Complaint prior to the date of accident. Also, for each such person, firm or corporation, please set forth the dates when all such work was done and the nature of the repairs, replacements or work performed.

OBJECTION:

Plaintiffs object to this interrogatory in that it is overly broad and seeks discovery of information that is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.

ANSWER:

Subject to and without waiving said objection:

3-4/05    KB Car Care, 4703A Plainfield, Houston, Texas 77036, 713-271-4434, installed front & rear brakes

6/25/05    Firestone Tire & Service Center, 1191 Edgebrook Drive, Houston Texas 77034, new tires & work on shocks

20. List or otherwise describe each and every exhibit that you intend to use at the trial of this case in support of your contentions against this Defendant or any other Defendant in this case.

ANSWER:

Plaintiffs will list exhibits and provide them for inspection and copying prior to trial as may be required by the Court. Plaintiffs may also utilize and/or offer any document produced by any party to this lawsuit.

21. Do you contend that this Defendant violated any codes, standards, laws or regulations in regard to any of the allegations against this Defendant made in your Complaint? If so, identify with particularity that code, standard, law or regulation that was violated; all facts which you deem constitute a violation of such code, standards, laws or regulations; and how such violation caused or contributed to the accident and the injuries alleged in the Complaint.

20

OBJECTION:

Plaintiffs object to this Interrogatory because it is vague, overly broad and would require Plaintiffs to marshal the entire evidence Plaintiffs will use at trial on the subject matter.

In an attempt to be as forthcoming as reasonably possible under the circumstances, Plaintiffs are responding to this Interrogatory subject to the objections stated above and on the basis of information currently available. Plaintiffs are providing basic legal and factual claims that are responsive to this contention interrogatory. Accordingly, Plaintiff answers below.

ANSWER:

Subject to and without waiving said objection, at all times material to this matter, the 2002 Ford Econoline E350 van failed to comply with any applicable federal or state standards for the design and certification of motor vehicle safety, despite Ford's contention or documents appearing otherwise.

22. Identify (by name, address, and telephone number) each person, firm or other entity having custody, possession or control of the subject automobile both prior to the accident made the basis of this suit and subsequent to the accident made the basis of this suit and the dates on which each such person or firm, etc., had custody, possession or control. Additionally, state whether the subject vehicle is presently in the same condition as it was immediately following the accident made the basis of this suit. If not, describe fully what changes have been made, the date such changes were made, and that person making such change.

OBJECTION:

Plaintiffs object to this interrogatory as overly broad.

ANSWER:

Subject to and without waiving said objection, the subject vehicle's ownership history includes:

| 10/30/01 | Capps Rent A Car, Inc., POB 610381, DFW Airport 75261, purchased from Quitman Ford, Inc., Quitman, TX. |
| 09/11/02 | BTB Learning Center, Inc. purchased from Charlie Thomas Ford. |
| 08/06/05 | Throwers Wrecker to Throwers Wrecker Yard then Bill & Sons' Body Shop |
| 04/23/07 | Prime Storage, 9333 South Main |
| 04/25/07 | Crown Wrecker transported to Evidence Storage, Inc. |

23. State whether any Plaintiff or Plaintiffs' decedent has ever been a party to any criminal or civil litigation or proceeding other than this action, and if so, state the substance of that litigation or proceeding, the court in which such case or proceeding was filed, and the identifying case number.

OBJECTION:

Plaintiffs object to this interrogatory insofar as some of the requested information is irrelevant and not calculated to lead to the discovery of admissible evidence. Plaintiffs also object to this Interrogatory on the basis that its criminal litigation request is outside the scope of allowable discovery in that it is not limited to felony or misdemeanor convictions involving moral turpitude.

24. Do you contend that your injuries or damages would have been eliminated or reduced by use of an alternative design of any component part of this 2002 Ford Econoline E-350? If so, please state specifically your alternative design, how such design is safer than the existing design, how such design is practical, and specifically if such alternative design was available for use by this Defendant at the time that it manufactured the 2002 Ford Econoline E-350 made the basis of this lawsuit.

OBJECTION:

Plaintiffs object to this interrogatory as overly broad, unduly burdensome and attempting to limit Plaintiffs' evidence to what can be stated in response to an interrogatory. Exact detail regarding alternative designs and injury causation requires expert testimony and would require Plaintiffs to marshal the entire evidence Plaintiffs will use at trial on the subject matter.

In an attempt to be as forthcoming as reasonably possible under the circumstances, Plaintiffs are responding to this Interrogatory subject to the objections stated above and on the basis of information currently available. Plaintiffs are providing basic legal and factual claims that are responsive to this contention interrogatory. Accordingly, Plaintiffs answer below.

ANSWER:

Subject to and without waiving said objection, yes, Plaintiffs claim that their injuries and damages would have been eliminated or reduced by use of alternative designs in the E350 in question. Alternative designs would include a vehicle with a longer wheelbase, wider track width and lower center of gravity, a vehicle with dual rear wheels, a vehicle with seat and seat belt systems that keep an occupant coupled to the seat cushion during a rollover event, and a roof and B pillar that were adequately strong to prevent structural failure roof collapse, causing the tempered glass to shatter. If the van had been equipped with ESC, it is unlikely that it would have rolled over.

Plaintiffs will supplement this answer when testifying experts have been designated.

25. Identify any other accidents or instances which you contend are substantially similar in nature to the incident made the basis of this suit, including the names of the occupants, the date of the incident, circumstances surrounding the incident, whether litigation resulted from this similar incident and if so, an identification of the court and case number.

ANSWER:

This is a fair question and one which Ford Motor Company has equal or superior access to the information requested. Plaintiffs would direct Defendant to any documents in its possession regarding E350 rollover incidents about which it has received notice or has been sued. To the extent Plaintiffs can obtain such information, Plaintiffs will supply it to Ford.

DONE this the _10_ day of September, 2007.

Respectfully submitted,

Robert E. Ammons (admitted pro hac vice)
The Ammons Law Firm
3700 Montrose Boulevard
Houston, Texas 77006
Telephone:    713-523-1606
Facsimile:    713-523-4159

Walter McGowan (MCG016)
Gray, Langford, Sapp, McGowan, Gray,
 Gray & Nathanson, P.C.
Post Office Box 830239
Tuskegee, Alabama 36083-0239
Telephone:    334-727-4830
Facsimile:    334-727-5877

Attorneys for Plaintiffs

23

**CERTIFICATE OF SERVICE**

I hereby certify that I have filed the foregoing with the Clerk of the Court and have placed a copy of the foregoing to the attorneys/parties below by United States Mail, postage prepaid and properly addressed, on September _/ D_ , 2007.

D. Alan Thomas
Huie, Fernambucq & Stewart, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, AL 35223-2484

Keith Blakemore d/b/a Car Care
4703 A Plainfield
Houston, TX 77036

Harold Holly Emmers, Jr.
10830 Harvest Sun Drive
Houston, TX 77064

Robert E. Ammons
Of Counsel

24

## **VERIFICATION**

THE  STATE  OF  TEXAS          §
                                                      §
COUNTY OF _H̲a̲r̲r̲i̲s̲_                §

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared Relia A. Scott, known to me to be the person whose name is subscribed below, and who, being authorized to do so, stated upon oath, as a Plaintiff in the above-referenced matter, that the information contained in the foregoing Interrogatory Answers is true and correct to the best of her knowledge.

_Relia A. Scott_
Relia A. Scott

SWORN  AND  SUBSCRIBED  before  me,  by  the  said  Relia  A.  Scott  on _Sept. 6_ , 2007, to certify which witness my hand and official seal.



_____
Notary Public in and for
The State of Texas

My commission expires: _4-23-09_

## **VERIFICATION**

THE  STATE  OF  TEXAS        §
                                          §
COUNTY OF _HARRIS_            §

    BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared Linda

Emmers, known to me to be the person whose name is subscribed below, and who, being authorized

to do so, stated upon oath, as a Plaintiff in the above-referenced matter, that the information

contained in the foregoing Interrogatory Answers is true and correct to the best of her knowledge.

_Linda Emmers_
_____
Linda Emmers

    SWORN  AND  SUBSCRIBED  before  me,  by  the  said  Linda  Emmers  on

_Sept. 6_____, 2007, to certify which witness my hand and official seal.



_[Notary signature]_
_____
Notary Public in and for
The State of Texas

My commission expires: _4-23-09_____

**VERIFICATION**

THE STATE OF TEXAS §

§

COUNTY OF HARRIS §

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared HAROLD EMMERS, III, known to me to be the person whose name is subscribed below, and who, being authorized to do so, stated upon oath, as a Plaintiff in the above-referenced matter, that the information contained in the foregoing Interrogatory Answers is true and correct to the best of his knowledge.

_____

Harold Emmers III

SWORN AND SUBSCRIBED before me, by the said Harold Emmers III, on September ___, 2007, to certify which witness my hand and official seal.

_____

Notary Public in and for

The State of Texas

My commission expires: 4-23-09

## **VERIFICATION**

THE   STATE   OF   TEXAS       §
                                §
COUNTY OF Harris                §

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared Bonita Billings, known to me to be the person whose name is subscribed below, and who, being authorized to do so, stated upon oath, as a Plaintiff in the above-referenced matter, that the information contained in the foregoing Interrogatory Answers is true and correct to the best of her knowledge.

_____
Bonita Billings

SWORN   AND   SUBSCRIBED   before   me,   by   the   said   Bonita   Billings   on Sept. 6 _____, 2007, to certify which witness my hand and official seal.



_____
Notary Public in and for
The State of Texas

My commission expires: 4-23-0 9

## <u>VERIFICATION</u>

THE  STATE  OF  TEXAS          §
                                §
COUNTY OF <u>*HARRIS*</u>          §

    BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared

Susie M. Emmers, known to me to be the person whose name is subscribed below, and who, being

authorized to do so, stated upon oath, as a Plaintiff in the above-referenced matter, that the

information contained in the foregoing Interrogatory Answers is true and correct to the best of her

knowledge.

*Mrs. Susie M. Emmers*
Susie M. Emmers

    SWORN  AND  SUBSCRIBED  before  me,  by  the  said  Susie  M.  Emmers  on

<u>Sept. 6</u>_____, 2007, to certify which witness my hand and official seal.



Notary Public in and for
The State of Texas

My commission expires: <u>4-23-09</u>

## **VERIFICATION**

THE   STATE   OF TEXAS          §
                               §
COUNTY OF _Harris_             §
                               §

BEFORE ME, THE UNDERSIGNED AUTHORITY, on this day personally appeared Arthur Billings, known to me to be the person whose name is subscribed below, and who, being authorized to do so, stated upon oath, as a Plaintiff in the above-referenced matter, that the information contained in the foregoing Interrogatory Answers is true and correct to the best of his knowledge.

_____
Arthur Billings

SWORN   AND   SUBSCRIBED   before   me,   by   the   said   Arthur   Billings   on
_Sept. 6_____, 2007, to certify which witness my hand and official seal.



_____
Notary Public in and for
The State of Texas

My commission expires: _4-23-09_